UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **WASHINGTON FEDERAL, MICHAEL McCREDY BAKER, and CITY OF AUSTIN POLICE RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated,** | **C.A. No. 13-cv-00385** |
| **Plaintiffs,** | |
| **v.** | |
| **THE UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

*(additional captions on following page)*

**MEMORANDUM OF LAW IN SUPPORT OF
WASHINGTON FEDERAL, MICHAEL McCREDY BAKER,
AND CITY OF AUSTIN POLICE RETIREMENT SYSTEM'S MOTION FOR
CONSOLIDATION AND APPOINTMENT OF INTERIM CO-LEAD COUNSEL**

| | |
|---|---|
| **JOSEPH CACCIAPELLE and MELVIN BAREISS, on behalf of themselves and all others similarly situated,** | **Case No. 13-cv-00466** |
| **Plaintiffs,** | |
| **v.** | |
| **THE UNITED STATES OF AMERICA,** | |
| **Defendant.** | |
| **AMERICAN EUROPEAN INSURANCE COMPANY, on behalf of itself and all others similarly situated,** | **Case No. 13-cv-00496** |
| **Plaintiff,** | |
| **v.** | |
| **THE UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT .........................................................................................1

II.    FACTUAL BACKGROUND..........................................................................................2

III.   PROCEDURAL HISTORY...........................................................................................3

IV.    ARGUMENT.................................................................................................................4

      A.     The Actions Should be Consolidated For All Purposes............................................4

      B.     Movants' Selection of Interim Co-Lead Counsel Should Be
           Approved...................................................................................................................4

           1.     Hagens Berman and SRKW Have Spearheaded the
                Investigation of the Claims Asserted in the Actions...................................6

           2.     Hagens Berman and SRKW Have Extensive
                Experience and Success in Leading Complex
                Shareholder Litigation ................................................................................7

           3.     Hagens Berman and SRKW Have Developed a
                Thorough Understanding of the Applicable Law ......................................10

           4.     Hagens Berman and SRKW Have Substantial
                Resources at Their Disposal to Manage the Actions ................................11

           5.     Hagens Berman and SRKW Will Fairly and Adequately
                Represent the Interests of the Class .........................................................11

V.     CONCLUSION.............................................................................................................12

010347-11  627616 V1

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Horn v. Raines*,
   227 F.R.D. 1 (D.D.C. 2005) ......................................................................................5

*In re Delphi ERISA Litig.*,
   230 F.R.D. 496 (E.D. Mich. 2005) ...........................................................................5

*In re Doral Fin. Corp. Sec. Litig.*,
   2006 WL 1120491 (S.D.N.Y. Apr. 27, 2006) ...........................................................5

*King v. United States*,
   84 Fed. Cl. 120 (Fed. Cl. 2008) ..............................................................................11

*Richman v. Goldman Sachs Grp., Inc.*,
   274 F.R.D. 473 (S.D.N.Y. 2011) .............................................................................5

### OTHER AUTHORITIES

Fed. R. Civ. P. 23(g) ........................................................................................ *passim*

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.2 ...................................................5

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.22 .................................................5

010347-11  627616 V1

# I.     PRELIMINARY STATEMENT

Movants Washington Federal, Michael McCredy Baker, and City of Austin Police Retirement System ("Movants" or the "*Washington Federal* plaintiffs"), the plaintiffs in the action captioned *Washington Federal, et al. v. United States of America*, Case No. 1:13-cv-00385, currently pending before Judge Margaret M. Sweeney, submit this Motion to: (i) consolidate the Actions for all purposes (as defined below) brought by and on behalf of shareholders of the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively, the "Companies"); and, (ii) approve Movants' selection of the law firms of Spector Roseman Kodroff & Willis, P.C. ("SRKW") and Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as interim co-lead counsel.

There are currently three class actions brought by Fannie Mae and Freddie Mac shareholders pending in the Court of Federal Claims, all of which are before Judge Sweeney: *Washington Federal, et al. v. United States*, Case No. 1:13-cv-00385, filed on June 10, 2013, *Cacciapelle, et al. v. United States*, Case No. 1:13-cv-00466, filed on July 10, 2013, and *American European Insurance Company v. United States*, Case No. 1:13-cv-00496, filed on July 19, 2013 (collectively, the "Actions").[1]  All of the Actions allege substantially similar facts and claims concerning conduct by the United States Government (the "Government"), acting through the United States Treasury ("Treasury") and the Federal Housing Finance Agency (the "FHFA"), in imposing and operating a conservatorship over Fannie Mae and Freddie Mac, two private,

---

[1] A fourth action, *Fairholme Funds, Inc., et al. v. United States*, Case No. 1:13-cv-00465, was filed on July 9, 2013, and is also pending before Judge Sweeney.  Although *Fairholme* alleges that a taking occurred under the same circumstances identified in the Actions, and is thus related to them, *Fairholme* is not a class action.  Rather, it seeks relief on behalf of a discrete group of Fannie Mae and Freddie Mac preferred shareholders. Movants do not seek to consolidate the *Fairholme* action at this time.

- 1 -

shareholder-owned corporations.  Further, the Actions seek to hold the Government accountable for improperly interfering with the protected property rights of the Companies' shareholders, causing these shareholders to lose, collectively, billions of dollars.

## II.    FACTUAL BACKGROUND

The Actions allege that the Government, in violation of the Fifth Amendment to the United States Constitution, interfered with the property rights of the Companies' shareholders, costing these shareholders billions of dollars.  In September 2008, amid turmoil in the housing market, as well as the broader financial markets, the Government placed Fannie Mae and Freddie Mac under the conservatorship of the FHFA, citing concerns about the Companies' financial health.  At the same time, the FHFA and Treasury executed a set of Stock Agreements, whereby, in exchange for making a line of credit available to each Company, the U.S. Treasury obtained warrants for 79.9% of each Company's common stock, exercisable at a nominal price, and $1 billion in preferred stock that is senior to all other preferred and common stock series and that included a cumulative 10% dividend.  As the housing market began to stabilize and Fannie Mae and Freddie Mac regained both stability and profitability, their debt to Treasury continued to escalate because of repeated draws made by both Companies, largely necessitated by the onerous 10% cumulative dividend on the senior preferred stock issued to the Government.

In August 2012, Treasury and FHFA amended the Stock Agreements for the third time, replacing the percentage-based dividend with an ongoing requirement that each Company pay to Treasury ***all profits*** earned above a periodically diminishing minimum capital level (the "Third Amendment").  The Third Amendment, which was orchestrated to coincide with certain accounting changes that would substantially increase the Companies' profits, resulted in an additional windfall to the Government, on top of the value that had already been transferred

- 2 -

through the evolving self-dealing arrangement orchestrated by the Government for its and the

public's benefit, at great expense to the Companies' shareholders.  For instance, in June 2013,

Fannie Mae and Freddie Mac collectively paid Treasury more than ***$66 billion*** in quarterly

dividends.

In short, the Government has abused its conservatorship authority, appropriating billions

of dollars from the Companies and their shareholders to support its own public policy goals.

### III.    PROCEDURAL HISTORY

On June 10, 2013, the *Washington Federal* plaintiffs filed their Complaint, which alleges

that each of four discrete actions taken by the Government violated the Fifth Amendment rights

of Fannie Mae and Freddie Mac shareholders.  These actions, pleaded as either a taking without

just compensation or, in the alternative, an illegal exaction, were:  (1) the placement of the

Companies into conservatorship; (2) the execution of the Stock Agreements; (3) the forced

assumption by the Companies of other financial institutions' toxic assets; and (4) the Third

Amendment.

A month later, on July 10, 2013, *Cacciapelle* was filed, alleging the same legal cause of

action arising out of the same facts and circumstances pled in the *Washington Federal* action.

The *Cacciapelle* plaintiffs subsequently filed a Notice of Directly Related Case, Case No. 1:13-

cv-00466, Dkt. No. 2 (the "*Cacciapelle* Notice").  On July 18, 2013, Defendant filed a Motion

for Enlargement of Time in which to respond to the Complaint in the *Washington Federal* action

to November 7, 2013.  The following day, the *American European Insurance Company* case was

filed, which substantially parroted the allegations of the *Cacciapelle* complaint.

010347-11  627616 V1

## IV.    ARGUMENT

**A.    The Actions Should be Consolidated For All Purposes.**

Consolidation is appropriate where there are multiple actions involving common questions of law or fact.  *See* R.C.F.C. 42(a).  Here, each of the Actions is brought by shareholders of Fannie Mae and Freddie Mac, seeking the same type of relief based on the same series of events.  The Actions involve the same set of factual allegations and arise out of the Government's violation of the Fifth Amendment rights of the Companies' shareholders during the course of the Government's conservatorship over Fannie Mae and Freddie Mac.  The *Cacciapelle* Notice recognizes the similar factual underpinnings of the Actions.

The Actions are, however, even more closely related than the *Cacciapelle* plaintiffs indicate.  First, the *Cacciapelle* Notice incorrectly suggests that the *Washington Federal* action does not assert that the Third Amendment constituted a taking.  As noted above, the *Washington Federal* complaint specifically asserts that the Third Amendment constituted a discrete taking, as clearly demonstrated by, *inter alia*, the relevant section heading therein:  "The August 2012 Amendment to the Stock Agreements Constituted a Taking of Private Property."  Case No. 1:13-cv-00385, Dkt. No. 1 at 57.  Second, although the *Cacciapelle* Notice attempts to distinguish the class definitions in the Actions, the broader class of shareholders represented in *Washington Federal* necessarily includes a substantial portion of the class members identified in *Cacciapelle*.

Accordingly, the Actions clearly meet the standard set forth in R.C.F.C. 42(a) and should be consolidated for all purposes.

**B.    Movants' Selection of Interim Co-Lead Counsel Should Be Approved.**

Courts have long recognized that, in complex cases, the appointment of interim lead counsel is an effective method of establishing an efficient case-management structure.  *See, e.g.*,

- 4 -

*Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 480 (S.D.N.Y. 2011) (appointing lead counsel in securities class action pursuant to statutory provision of Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(a)(3)(B)(v)); *In re Delphi ERISA Litig.*, 230 F.R.D. 496, 498-99 (E.D. Mich. 2005) (lead counsel appointed in ERISA action); *Horn v. Raines*, 227 F.R.D. 1, 3-4 (D.D.C. 2005) (lead counsel appointed in shareholder derivative action).  Accordingly, "[t]he court should seek [an] appropriate leadership structure to coordinate the litigation and avoid duplication." *In re Doral Fin. Corp. Sec. Litig.*, 2006 WL 1120491, at *1 (S.D.N.Y. Apr. 27, 2006) (citing *MacAlister v. Guterma*, 263 F.2d 65, 68-69 (2d Cir. 1958)); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) §§ 10.2 and 10.22.

The R.C.F.C. expressly contemplates the appointment of interim lead counsel prior to class certification proceedings.  *See* R.C.F.C. 23(g)(3) (providing for designation of "interim counsel").  In evaluating an interim lead counsel motion, this Court must consider the criteria set forth in R.C.F.C. 23(g)(1) and (4).  R.C.F.C. 23(g)(2);[2] *accord In re Delphi*, 230 F.R.D. at 498 (applying analogous provision of Fed. R. Civ. P. 23(g) to lead counsel motion).  Thus, the Court must consider:

> (i)    the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii)  counsel's knowledge of the applicable law; and
>
> (iv)   the resources that counsel will commit to representing the class.

---

[2]  The factors identified in R.C.F.C. 23(g)(1) and (4) are those contemplated by R.C.F.C. 23(g)(2) as relevant in appointing interim class counsel.

R.C.F.C. 23(g)(1)(A).  Further, the Court should consider whether proposed interim lead counsel can fairly and adequately represent the interests of the class.  *See* R.C.F.C. 23(g)(2).  With regard to each of these criteria, Hagens Berman and SRKW are eminently qualified.

1. **Hagens Berman and SRKW Have Spearheaded the Investigation of the Claims Asserted in the Actions**

The *Washington Federal* plaintiffs were the first to file a complaint in this litigation, and in fact, were the first to file ***any*** complaint challenging the Government's conduct in connection with the conservatorship of the Companies.  The *Washington Federal* plaintiffs began their extensive factual and legal investigation of the claims more than a year ago, in June 2012.  This included consulting with experts in the area of constitutional law and damages.  Having worked successfully with Boies, Schiller & Flexner LLP ("Boies Schiller") in the past on other matters, counsel for the *Washington Federal* plaintiffs actually approached the firm (which now represents the *Cacciapelle* plaintiffs) in early October of 2012, after having already spent several months rigorously researching the history and legal ramifications of the Government's conduct at issue, to discuss working together again to prepare a complaint on behalf of Fannie Mae and Freddie Mac shareholders.  Ultimately, however, Boies Schiller declined to pursue the claims espoused in the *Washington Federal* action at that time.  Thereafter, counsel for the *Washington Federal* plaintiffs spent several additional months researching, collaborating, drafting and ultimately filing their 65-page complaint.

During the discussions that counsel in the *Washington Federal* action had with Boies Schiller, they informed Boies Schiller of the terms of the Third Amendment and its potential impact on the Companies' shareholders, as Boies Schiller was previously unaware of this

- 6 -

important fact.[3]  Several months after the Companies returned to profitability in 2013 and the

public became more aware of the magnitude of the windfall the Government would reap at the

expense of the Companies' shareholders,[4] and a month after the *Washington Federal* action was

filed, Boies Schiller launched the *Cacciapelle* action pursuing claims tied to the Third

Amendment.  The efforts by SRKW and Hagens Berman over the past year clearly demonstrate

both their long-standing commitment to pursuing relief on behalf of the Companies' shareholders

and their ability to effectively prosecute the litigation.

> **2.     Hagens Berman and SRKW Have Extensive Experience and Success in Leading Complex Shareholder Litigation**

Both Hagens Berman and SRKW are highly respected class action law firms with

extensive experience achieving results for shareholders in complex litigation.

Since its founding in 1993, Hagens Berman has represented plaintiffs in a broad spectrum

of complex, multi-party class action cases and has been recognized in courts throughout the

United States for its ability and experience in handling major class litigation.  As detailed in its

firm resume, attached to the Declaration of Steve W. Berman ("Berman Decl.") as Exhibit A, the

firm's reputation for taking cases as far as necessary, including trial, gives it instant credibility in

prosecuting complex litigation.  Throughout its history, Hagens Berman has repeatedly achieved

strong results for the classes it has represented.

For example, last week Judge James V. Selna granted final approval of a $1.6 billion

settlement in *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices and*

*Prods. Liab. Litig.*, No. 8:10ML2151 JVS (FMOx) (C.D. Cal.), the largest auto settlement, both

---

[3] Counsel for the *Fairholme Funds, Inc., et al.* likewise was not aware of the Third Amendment until SRKW brought it to their attention.

[4] The plaintiff in the just-filed *American European Insurance Company* action filed a complaint that is effectively a word-for-word copy of the *Cacciapelle* action and clearly lodged for strategic purposes to try and eke out a position in the Actions.

in terms of class members and recovery, in U.S. history. Hagens Berman was recently lead counsel in *In re Charles Schwab Corp. Secs. Litig.*, No. 08-cv-01510 (N.D. Cal.), a securities class action that settled on the eve of trial while the parties were arguing *in limine* motions. That case settled for some $235 million, resulting in a 42.5% recovery for the federal class and an 80% recovery for the California class.

In *In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.), Hagens Berman tried the class case against four manufacturers and successfully argued the appeal from the trial before the First Circuit. The case resulted in settlements with dozens of pharmaceutical companies, with consumers receiving three times their actual damages. Hagens Berman was also lead counsel in *New England Carpenters v. First DataBank*, *et al.*, No. 05-11148-PBS (D. Mass.), a class action on behalf of a nationwide class of private payors that purchased prescription brand-name drugs, where the firm achieved a $350 million settlement eleven days before trial was scheduled to start. Judge Patti Saris awarded the firm a healthy multiplier for its initiative in uncovering the scheme at issue and for its quality work.

Hagens Berman was co-lead counsel representing Enron pension plan participants in *In re Enron Corp. Sec. Derivative & ERISA Litigation*, Case No. MDL 1446 (S.D. Tex.), where the firm recovered more than $250 million for its clients – the largest ERISA settlement in history. Similarly, the firm was co-lead counsel in *In re Visa Check/Mastercard Antitrust Litigation*, No. 96-cv-05238 (E.D.N.Y.), which settled for over $3 billion in cash and over $20 billion in injunctive relief, making it the largest antitrust settlement in history. Additionally, Hagens Berman was lead counsel in *Attorney General Tobacco Litigation*, where the firm represented thirteen states in pursuing innovative claims against the tobacco companies and helped achieve the largest recovery in litigation history ($260 billion).

- 8 -

Likewise, as detailed in its firm resume, attached to the Berman Decl. as Ex. B, SRKW has been widely recognized as one of the preeminent law firms in shareholder litigation, having substantial expertise and experience leading complex securities class actions and shareholder derivative suits.  For example, SRKW led the first U.S. securities class action settled on two continents for a collective $145 million in *In re Converium Securities Litigation,* No. 04-cv-7897 (S.D.N.Y.).  SRKW helped obtain a landmark decision on jurisdiction in 2012 that will allow more institutional investors to use the Netherlands to bring and resolve actions in Europe when U.S. remedies do not exist.  The firm also represented a number of large institutions appointed lead plaintiffs in the landmark *Parmalat* action, *In re Parmalat Securities Litigation*, No. 04-cv-0030 (S.D.N.Y.), which was known as the "Enron" of Europe.  In that case, SRKW and its co-counsel not only secured a $96.5 million settlement against the defendants, but also devised a unique legal theory against the bankrupt Parmalat entity that used Italian bankruptcy law to secure funds not normally available to investors.  Similarly, SRKW has exhibited its skill and leadership in numerous shareholder derivative cases.  *See, e.g.*, *In re Abbott Laboratories S'holder Derivative Litig.*, No. 99-cv-7246 (N.D. Ill.); *In re Atheros Commc'ns, Inc. S'holder Litig.*, No. 2975-CC (Del. Ch.); *In re Bristol-Myers Squibb Derivative Litig.*, No. 02-cv-8571 (S.D.N.Y.).  SRKW also took significant leadership roles, and obtained substantial recoveries for plaintiffs, in other complicated legal contexts, including defective products litigation, pharmaceutical fraud, and antitrust class actions:  *Kaiser Foundation Health Plan v. Pfizer, Inc.*, No. 04-cv-10739 (D. Mass.); *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 (D. Mass.); *In re OSB Antitrust Litig.*, No. 06-0826 (E.D. Pa.); *In re Linerboard Antitrust Litig.*, MDL No. 1261 (E.D. Pa.); *In re Flat Glass Antitrust Litig.*, MDL No. 1200 (W.D. Pa.); *In re Relafen Antitrust Litig.*, No. 01-cv-12239 (D. Mass.); *Baby Prods. Antitrust*

- 9 -

*Litig.*, Nos. 06-cv-242 and 09-cv-6151 (E.D. Pa.).  Thus, as amply demonstrated in its firm

resume, attached hereto, SRKW's track record and leadership in complex litigation is exemplary

and the firm can adequately represent the interests of the proposed classes in these Actions.  *See*

Berman Decl., Ex. B.

     In sum, Hagens Berman and SRKW each possess extensive experience managing and

prosecuting complex cases and serving as interim co-lead counsel.  The two firms have worked

together successfully in the past, and they will work closely together here to ensure that the

Actions proceed efficiently and that the class members' interests are fully protected.

     **3.**      **Hagens Berman and SRKW Have Developed a Thorough Understanding of the Applicable Law**

     As detailed above, counsel at SRKW and Hagens Berman have spent over a year

rigorously investigating and evaluating the factual circumstances and legal ramifications of the

Government's conduct giving rise to these Actions and, in doing so, have developed a strong

understanding of the law applicable to the Actions.  In addition to undertaking extensive legal

research, the firms were assisted by a legal consultant in the area of constitutional law.

Moreover, both SRKW and Hagens Berman have extensive experience representing

shareholders' interests in a variety of fields in which the legal landscape is always changing,

requiring counsel to constantly keep abreast of developments in the governing legal framework

and evaluate their impact on plaintiffs.  As noted above, these include representing the interests

of classes of shareholders in complex securities fraud cases and shareholder derivative litigation.

     Given their experience in advancing the *Washington Federal* Action and in conducting

other complex litigation, SRKW and Hagens Berman are amply prepared to effectively pursue

the Actions in light of the applicable law.

- 10 -

### 4. Hagens Berman and SRKW Have Substantial Resources at Their Disposal to Manage the Actions

Both Hagens Berman and SRKW have substantial resources at their disposal that will aid in the management of the Actions.  First, both firms have significant financial resources generated through successes in complex securities fraud, antitrust, and consumer protection litigation.  These finances are more than sufficient to allow for the prosecution of the Actions through trial and any appeals.  Further, both Hagens Berman and SRKW have sufficient attorneys and support staff on hand to ensure that the Actions receive the requisite level of attention and the highest caliber work from drafting the first complaint to preparing the case for trial and appeal, if necessary.  With Hagens Berman and SRKW serving as interim co-lead counsel, Fannie Mae and Freddie Mac shareholders will benefit from both firms' resources and best efforts until the matter is fully resolved.

### 5. Hagens Berman and SRKW Will Fairly and Adequately Represent the Interests of the Class

In order to demonstrate that class counsel will fairly and adequately protect the interests of the class, a movant must show that counsel will vigorously prosecute the case and that the plaintiff does not have any conflicts of interest with other class members.  *See King v. United States*, 84 Fed. Cl. 120, 127 (Fed. Cl. 2008).  "[C]ounsel must be qualified, experienced, and generally able to conduct the litigation."  *Id.* (internal quotation marks and citations omitted).  In evaluating whether counsel will "fairly and adequately" represent the class, the court considers the factors identified in R.C.F.C. 23(g)(1)(A).  *See King*, 84 Fed. Cl. at 127 (citing prior version of R.C.F.C. 23(g)).  For all the reasons already discussed, Movants' choice of proposed interim co-lead counsel clearly demonstrates the requisite experience in representing shareholders in class actions and the commitment to representing the interests of the class members to ensure

010347-11  627616 V1

that the litigation will be conducted appropriately and effectively.

## V.    CONCLUSION

For all of the foregoing reasons, Movants respectfully request that:  (1) the Actions be consolidated for all purposes; and, (2) their counsel, Hagens Berman and SRKW, be appointed interim Co-Lead Counsel.

Dated:  July 23, 2013

By_____/s / Steve W. Berman_____
Steve W. Berman
Attorney of Record
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
E-mail:  steve@hbsslaw.com

OF COUNSEL:

Jennifer Fountain Connolly
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1629 K St. NW, Suite 300
Washington, D.C.  20006
Telephone:  (202) 355-6435
Facsimile:  (202) 355-6455
E-mail:  jenniferc@hbsslaw.com

Robert M. Roseman
Joshua B. Kaplan
**SPECTOR ROSEMAN KODROFF &**
        **WILLIS, P.C.**
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone:  (215) 496-0300
Facsimile:  (215) 496-6611
E-mail:  rroseman@srkw-law.com
E-mail:  jkaplan@srkw-law.com

Mark S. Willis
James McGovern
**SPECTOR ROSEMAN KODROFF &**
        **WILLIS, P.C.**
1101 Pennsylvania Avenue, N.W.
Suite 600
Washington, D.C.  20004
Telephone:  (202) 756-3601
Facsimile:  (202) 756-3602
E-mail:  mwillis@srkw-law.com
E-mail:  jmcgovern@srkw-law.com

*Attorneys for Plaintiffs Washington Federal,*
*Michael McCredy Baker, and City of Austin Police*
*Retirement System*

- 13 -